**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**CHAD FORSYTHE,**

                              **Plaintiff,**

                v.                          5:17-CV-1132
                                                  (FJS/TWD)

**CITY OF WATERTOWN; CHARLES
DONOGHUE, Chief of Police, individually;
and CRISTIN FUHRMAN, n/k/a CRISTIN
O'BRIEN, Detective, individually,**

                              **Defendants.**

---

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **THE RUSSELL FRIEDMAN LAW GROUP, LLP**<br>16 West Main Street, Suite 207<br>Rochester, New York 14614<br>Attorneys for Plaintiff | **RYAN C. WOODWORTH, ESQ.** |
| **SLYE LAW OFFICES, P.C.**<br>104 Washington Street<br>Watertown, New York 13601<br>Attorneys for Defendants | **ROBERT J. SLYE, ESQ.** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Pending before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* Dkt. No. 42. Plaintiff opposes the motion. *See* Dkt. No. 48.

## II. BACKGROUND

This case arises out of an incident that occurred in early 2016, in which a child, N.H., accused Plaintiff of inappropriately touching her. On or about January 17, 2016, N.H.'s mother, K.H., asked Plaintiff and his wife if her daughter N.H. could stay overnight at their residence with their daughter, who was a good friend of N.H. K.H. stated that her reason for asking was that her boyfriend would be visiting her that night.[1]

Defendant O'Brien[2] was the detective who was assigned to investigate N.H.'s accusations against Plaintiff. She spoke to K.H. and N.H. for the first time on January 21, 2016, at the Child Advocacy Center. At that time, she took N.H.'s sworn statement.

On February 5, 2016, Defendant O'Brien arrived at Plaintiff's residence to question him regarding N.H.'s accusations of inappropriate touching, and Plaintiff denied all of the accusations. Plaintiff's wife and his two daughters also denied any knowledge of N.H.'s claims. According to Plaintiff, Defendant O'Brien stated to both him and his wife that N.H.'s accusations against him were "eerily similar" to N.H.'s prior accusations against her mother's boyfriend. Plaintiff also asserts that Defendant O'Brien told him and his wife that this investigation was "low on the totem pole of allegations" and that he should not be worried. On February 5, 2016, Defendant O'Brien requested that the case against Plaintiff be closed because she was unable to corroborate N.H.'s statements.[3]

---

[1] Plaintiff states that, at that time, he and his wife did not know that there was an outstanding order of protection against K.H.'s boyfriend, ordering him to stay away from N.H. due to N.H.'s prior accusations against her mother's boyfriend for inappropriate touching.

[2] Both parties refer to Defendant Fuhrman by her current name, "O'Brien." Therefore, the Court will do the same.

[3] Plaintiff disputes that the reason Defendant O'Brien requested that the case be closed
(continued...)

Defendant O'Brien never took a statement from Plaintiff because he stated that he was going to contact an attorney. However, he never stated that he would not make a statement without an attorney present.

On February 22, 2016, Defendant O'Brien met with Assistant District Attorney Curri, K.H. and N.H. At that meeting, Assistant District Attorney Curri stated that, if Defendant O'Brien arrested Plaintiff, the District Attorney's Office would prosecute the case. She also told Defendant O'Brien that she did not need to corroborate N.H.'s statements because N.H. was old enough to testify.

On February 25, 2016, Defendant O'Brien arrested and charged Plaintiff with Forcible Touching and Endangering the Welfare of a Minor. According to Plaintiff, Defendant O'Brien told him that she did not want to arrest and charge him, but K.H. was pushing it. Plaintiff was arraigned in City of Watertown Court on the same day. Plaintiff was found not guilty after a trial.

Based on these facts, Plaintiff filed a complaint, alleging claims against the City of Watertown; Charles Donoghue, Chief of Police individually; Cristin N. Fuhrman, n/k/a Cristin N. O'Brien, Detective, individually; County of Jefferson; Kristyna S. Mills, District Attorney, individually; and Steven D. Cole, Assistant District Attorney, individually. *See* Dkt. No. 1, Complaint. In a Stipulation and Order, Plaintiff dismissed with prejudice his claims against Defendants County of Jefferson, Kristyna S. Mills, and Steven D. Cole. *See* Dkt. No. 24. Thus, the

---

[3](...continued)
was because she could not corroborate N.H.'s statements. Specifically, Plaintiff states that he "disputes Defendants' statement of fact to the extent that the reason Det. O'Brien requested that the case be closed was anything other than a lack of probable cause to arrest on February 5, 2016. [However,] [t]o the extent Defendants have accurately stated Det. O'Brien's December 18, 2018 deposition testimony, Plaintiff does not dispute." *See* Dkt. No. 48-1, Plaintiff's Response to Defendants' Statement of Facts, at ¶ 16.

remaining Defendants in this action are the City of Watertown, Charles Donoghue, and Cristin N. O'Brien (collectively "City Defendants").

In his complaint, Plaintiff alleged the following causes of action against the remaining Defendants: (1) abuse of process in violation of 42 U.S.C. § 1983 against Defendants Donoghue and O'Brien; (2) malicious prosecution in violation of 42 U.S.C. § 1983 against Defendants Donoghue and O'Brien; (3) false arrest in violation of 42 U.S.C. § 1983 against Defendant O'Brien; (4) false imprisonment in violation of 42 U.S.C. § 1983 against Defendant O'Brien; (5) abuse of process in violation of New York State common law against the City Defendants; (6) malicious prosecution against the City Defendants; (7) false arrest in violation of New York State common law against Defendant City of Watertown and Defendant O'Brien; (8) false imprisonment in violation of New York State common law against Defendant City of Watertown and Defendant O'Brien; (9) negligent supervision, training and retention in violation of New York State common law against Defendant City of Watertown and Defendant Donoghue; and (10) intentional infliction of emotional distress in violation of New York State common law against Defendants Donoghue and O'Brien. *See, generally*, Dkt. No. 1, Complaint.

On May 25, 2019, the parties stipulated to the dismissal without prejudice of Counts V, VI, VII, VIII, IX, and X (collectively the "state law claims") against Defendants Donoghue and O'Brien. *See* Dkt. No. 35. Thus, the only remaining claims in this action are Plaintiff's § 1983 claims for abuse of process and malicious prosecution against Defendant Donoghue and Defendant O'Brien, his § 1983 claims for false arrest and false imprisonment against Defendant O'Brien and his state-law claims for abuse of process, false arrest, false imprisonment, and negligent supervision, training and retention against Defendant City of Watertown.

After the parties completed discovery, Defendants filed the pending motion for summary judgment, *see* Dkt. No. 42, which Plaintiff opposed, *see* Dkt. No. 48.

### III. DISCUSSION[4]

**A.      Summary judgment standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The movant may satisfy this burden "by pointing out the absence of evidence to support the non-movant's claims." *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986)).

Once the movant meets this initial burden, the non-moving party "must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex*, 477

---

[4] Plaintiff does not allege any facts in his complaint that would support a finding that Defendant Donoghue was personally involved in any of the incidents that form the basis of his § 1983 claims for abuse of process and malicious prosecution. Therefore, the Court dismisses these claims against Defendant Donoghue.

The Court also notes that, in Defendants' memorandum of law in support of their motion for summary judgment, they argue that Defendant City of Watertown has no liability for § 1983 claims. *See* Dkt. No. 42-3 at 10. A review of Plaintiff's complaint reveals that Plaintiff did not assert his § 1983 claims against Defendant City of Watertown. Rather, Plaintiff only asserts his state-law claims for abuse of process, malicious prosecution, false arrest, false imprisonment and negligent supervision, training and retention against Defendant City of Watertown.

U.S. at 322-23, 106 S. Ct. 2548; *Raskin v. Wyatt Co.*, 125 F.3d 55, 65-66 (2d Cir. 1997)). Specifically, the moving party must cite to "particular parts of materials in the record" or show "that the materials cited [by the movant] do not establish the absence . . . of a genuine dispute" as to any material fact. Fed. R. Civ. P. 56(c)(1). The party opposing a motion for summary judgment "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citing *D'Amico*, 132 F.3d at 149) (other citation omitted), as "unsupported allegations do not create a material issue of fact," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 31 (2d Cir. 2000) (citations omitted). "Rather, the nonmoving party must present 'significant probative evidence tending to support the complaint.'" *Smith v. Menifee*, No. 00 Civ. 2521 (DC), 2002 WL 461514, *3 (S.D.N.Y. Mar. 26, 2002) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

In reviewing the evidentiary record, the court "must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998) (citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 189 L. Ed. 2d 538 (1986)) (other citation omitted); *see also Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001) (quotation omitted). If, even when the record evidence is viewed in this light, the court finds that there is not "sufficient evidence favoring the nonmoving party for a [factfinder] to return a verdict for that party," or if the evidence "is not significantly probative," a court may grant summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

**B.      Plaintiff's § 1983 claim for abuse of process against Defendant O'Brien**

"'In order to state a [§ 1983] claim for abuse of process, a plaintiff must establish that the defendant[] had an improper *purpose* in instigating the action . . . [and] that [she] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution.'" *Griffin v. City of New York*, No. 16 Civ. 05790 (ER), 2019 WL 280366, *5 (S.D.N.Y. Jan. 18, 2019) (quoting *Morales v. City of New York*, 752 F.3d 234, 238 (2d Cir. 2014) (per curiam)). "'[I]t is not sufficient for a plaintiff to allege that the defendant[] [was] seeking to retaliate against him by pursuing his arrest and prosecution.'" *Id.* (quoting *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003)). "'Examples of the types of collateral objectives covered by the tort of malicious abuse of process include the infliction of economic harm, extortion, blackmail, and retribution.'" *Id.* (quoting *Johnson v. City of New York*, No. 15 Civ. 8195 GHW, 2017 WL 2312924, at *18 (S.D.N.Y. May 26, 2017)). "Importantly, 'abuse of process is the improper use of process *after* it is regularly issued.'" *Id.* (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) (internal quotation marks omitted and emphasis added)).

Plaintiff has neither alleged nor come forward with any admissible evidence from which a jury could find that Defendant O'Brien aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution. The closest he comes to making such an argument is his statement that Defendant O'Brien told him that she did not want to arrest and charge him but that K.H. was pushing it. This statement, he argues, creates an issue of fact regarding whether Defendant O'Brien's purpose for reopening and continuing the legal process against him was proper or improper. *See* Dkt. No. 48 at 15. However, even if Defendant O'Brien made that statement to Plaintiff, there is nothing in that statement to suggest that Defendant O'Brien reopened the case to achieve any

collateral purpose, such as to inflict economic harm, extortion, blackmail or retribution.
Accordingly, the Court grants Defendants' motion for summary judgment with regard to Plaintiff's abuse of process claim.

**C.    Plaintiff's § 1983 claim for malicious prosecution against Defendant O'Brien**

"'[F]ederal law defines the elements of a § 1983 malicious prosecution claim . . . .'" *Griffin*, 2019 WL 280366, at *3 (quoting *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018)). To prevail on a § 1983 malicious prosecution claim, a plaintiff must demonstrate the following: "'(i) the commencement or continuation of a criminal proceeding against [him]; (ii) the termination of the proceeding in [his] favor; (iii) that there was no probable cause for the proceeding; and (iv) that the proceeding was instituted with malice.'" *Id.* (quoting *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (internal quotation marks omitted)). In addition, "a plaintiff must demonstrate 'a post-arraignment seizure.'" *Id.* (quoting *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013)). "'Probable cause, in the context of malicious prosecution, has also been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty.'" *Id.* at *4 (quoting *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013)).

"Although 'there is a presumption that a prosecutor exercises independent judgment in deciding whether to bring a criminal case, a police officer can be liable for malicious prosecution when a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors.'" *Breton v. City of New York*, 404 F. Supp. 3d 799, 812 (S.D.N.Y. 2019) (quoting *Rogers v. Bisono*, No. 15cv6670, 2016 WL 4224072, at *3 (S.D.N.Y. Aug. 9, 2016) (quotation marks omitted)). "'Like a prosecutor's knowing use of false evidence to obtain a tainted

conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable "corruption of the truth seeking function of the trial process."'" *Id.* at 813 (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (quoting *United States v. Agurs*, 427 U.S. 97, 104, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976))); *see also Cooper v. City of New York*, No. 17-CV-1517 (NGG) (RLM), 2019 WL 3642996, *7 (E.D.N.Y. Aug. 5, 2019) (stating that, "[i]n order to adequately plead a malicious prosecution claim against a police officer, a plaintiff must allege facts 'showing that the officer brought formal charges and had the person arraigned, or filled out complaining and corroborating affidavits, or swore to and signed a felony complaint'" (quoting *Myers v. Moore*, 326 F.R.D. 50, 60 (S.D.N.Y. 2018) (quotations and citation marks omitted) (alterations adopted)). Finally, "[a]s a general rule, 'once a criminal Defendant has been formally charged, the chain of causation between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor, thereby abolishing the Officer's responsibility for the prosecution.'" *Santulli v. Moy*, No. 18-CV-122 (NGG) (VMS), 2019 WL 3429081, *4 (E.D.N.Y. July 30, 2019) (quoting *Williams v. City of New York*, No. 02-CV-3693 (CBM), 2003 WL 22434151, at *6 (S.D.N.Y. Oct. 23, 2003) (citing *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999))).

Plaintiff does not allege nor has he come forward with any admissible evidence from which a jury could find that Defendant O'Brien fabricated evidence and forwarded that evidence to the District Attorney. Furthermore, although Defendant O'Brien filled out the criminal complaint, that complaint was based on the sworn statement of the victim, N.H., which as Defendant O'Brien testified at her deposition, she believed to be true. There is also nothing in the record to suggest that Defendant O'Brien initiated the prosecution because of malice. To the contrary, the facts on which

Plaintiff relies to support this claim tend to indicate a lack of malice. For example, Defendant O'Brien did not immediately initiate the prosecution upon receiving the victim's sworn statement although she believed she had probable cause to arrest Plaintiff based on N.H.'s statement. Rather, she recommended closing the case because she could not corroborate that statement, which she believed she was required to do because N.H. was a minor. It was only after her conversation with the Assistant District Attorney, who told her that, given the victim's age, she did not need corroboration, that she made the decision to arrest and initiated the prosecution of Plaintiff. Therefore, the Court grants Defendants' motion for summary judgment with regard to Plaintiff's malicious prosecution claim.

### D. Plaintiff's § 1983 false arrest/false imprisonment claims

"'A § 1983 claim for false arrest or false imprisonment' is 'based on an individual's Fourth Amendment right to be free from unreasonable seizures.'" *Hudson v. Cnty. of Duchess*, No. 12-CV-5548 (KMK), 2015 WL 7288657, *7 (S.D.N.Y. Nov. 16, 2015) (quoting *Weaver v. City of New York*, No. 13-CV-20, 2014 WL 950041, at *4 (E.D.N.Y. Mar. 11, 2014)) (citing *Cres v. County of Nassau*, 996 F. Supp. 2d 186, 203 (E.D.N.Y. 2014) ("Under New York Law, the tort of false arrest is synonymous with that of false imprisonment, and courts use that tort to analyze an alleged Fourth Amendment violation in the Section 1983 context." (internal quotation marks omitted))). "'[T]o prevail on a claim of false arrest a plaintiff must show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Id.* (quoting *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (internal quotation marks omitted)) (citing *Wiltshire*

-10-

*v. Wanderman*, No. 13-CV-9169, 2015 WL 4164808, at *2 (S.D.N.Y. July 10, 2015) (same)).

"'Probable cause "is a complete defense to an action for false arrest" brought under New York law or § 1983.'" *Id.* (quoting *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996))) (other citation omitted). "'Probable cause to arrest exists when the officers have . . . reasonably trustworthy information as to [] facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been . . . committed by the person to be arrested.'" *Id.* (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)). "To determine whether probable cause existed for an arrest, a court 'assess[es] whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest.'" *Id.* (quoting *Ackerson*, 702 F.3d at 19 (internal quotation marks omitted)); *see also Bate v. City of New York*, No. 15 Civ. 2631 (PGG), 2018 WL 4757940, *15 (S.D.N.Y. Sept. 30, 2018) (stating that, "'[w]hen determining whether probable cause exists courts must consider those facts <u>available to the officer</u> at the time of the arrest and immediately before it, as [p]robable cause does not require absolute certainty'" (quoting *Panetta v. Crowly*, 460 F.3d 388, 395 (2d Cir. 2006) (emphasis in original) (internal quotations and citations omitted)) (other citation omitted). "'The burden of establishing the absence of probable cause rests on the plaintiff,' and '[t]he question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and knowledge of the officers.'" *Hudson*, 2015 WL 7288657, at *7 (quoting *Sethi v. Nassau County,* No. 11-CV-6380, 2014 WL 2526620, at *4 (E.D.N.Y. June 3, 2014) (internal quotation marks omitted)) (citing *Nickey v. City of New York*, No. 11-CV-3207, 2013 WL 5447510, at *5 (E.D.N.Y. Sept. 27, 2013) ("[W]hen the facts material to a probable cause determination are undisputed, the matter is a question of law properly decided by the

[c]ourt.")).

"'An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity.'" *Id.* at *9 (quoting *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)) (citing *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity . . . ." (citation omitted)); *Williams v. City of New York*, No. 14-CV-5123, 2015 WL 4461716, at *4 (S.D.N.Y. July 21, 2015) ("A police officer may have probable cause to arrest and charge a suspect based on information provided by a single victim or witness, unless circumstances raise doubts as to the person's veracity." (internal quotation marks omitted)); *Blythe v. City of New York*, 963 F. Supp. 2d 158, 182 (E.D.N.Y. 2013) (noting that "[i]nformation provided by an identified citizen accusing another individual of committing a specific crime is sufficient to provide the police with probable cause to arrest," and therefore granting the defendants' motion for summary judgment because "an identified individual . . . called 911 and reported" the plaintiff's alleged wrongdoing)); *see also McGee v. Doe*, 568 F. App'x 32, 37 (2d Cir. 2014) (summary order) (stating that "'[i]t is well established that a law enforcement official has probable cause to arrest if he received his information from some person, normally a putative victim or eyewitness' *Martinez*, 202 F.3d at 634 (internal quotation marks omitted). However, the victim-informant must be credible, and can only be relied upon 'absent circumstances that raise doubts as to the victim's veracity.' *See Lee v. Sandeberg*, 136 F.3d 94, 103 (2d Cir. 1997) (internal quotation marks omitted)). In fact, "'the veracity of citizen complainants who are the victims of the very crime they report to the police is

-12-

assumed.'" *Hudson*, 2015 WL 7288657, at *9 (quoting *Conte*, 2010 WL 3924677, at *13 (alterations and internal quotation marks omitted)). "Moreover, the victim's credibility is further bolstered . . . when the statements to the police are sworn on penalty of perjury. . . ." *Id.* (internal citations omitted).

"Probable cause is evaluated based on the 'totality of the circumstances,' and 'should encompass "plainly exculpatory evidence" alongside inculpatory evidence to ensure the court has a full sense of the evidence that led the officer to believe that there was probable cause to make an arrest.'" *Bate*, 2018 WL 4757940, at *15 (quoting *Stansbury v. Wertman*, 721 F.3d 84, 93 (2d Cir. 2013) (quoting *Panetta*, 460 F.3d at 395)). Courts, however, should remember that "'[p]robable cause is a "fluid" standard that "does not demand hard certainties or mechanistic inquiries"; nor does it "demand that an officer's good-faith belief that a suspect has committed or is committing a crime be correct or more likely true than false."'" *Id.* (quoting *Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) (internal quotations and citations omitted)). "'Rather, it requires only facts establishing "the kind of fair probability" on which a "reasonable and prudent" person, as opposed to a "legal technician[]," would rely.'" *Id.* (quotation omitted).

"Unless there are '"circumstances that raise doubt as to the victim's veracity" a victim's report of a crime is generally enough, by itself, to establish probable cause.'" *Jean v. City of New York*, No. 09 CV 801 (RJD), 2011 WL 4529634, *4 (E.D.N.Y. Sept. 28 (2011) (quoting *Koester v. Lanfranchi*, 2008 WL 3842253, *1 (2d Cir. 2008) (quoting *Singer*, 63 F.3d at 119)). "'The most common situation in which such doubts arise is whether there exists a prior relationship between the victim and the accused that gives rise to a motive for a false accusation.'" *DiStefano v. Sedita*, No. 11-CV-1125 (MKB), 2014 WL 349251, *4 (E.D.N.Y. Jan. 21, 2014) (quoting *Mistretta v.*

-13-

*Prokesch*, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998)) (other citations omitted).

Finally, for purposes of a false arrest claim, it is irrelevant if ultimately the plaintiff is acquitted of the charges against him because "'the inquiry is whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest [the] plaintiff.'" *Hudson*, 2015 WL 7288657, at *10 (quoting *Alvarez v. County of Orange*, 95 F. Supp. 3d 385, 400 (S.D.N.Y. 2015)) (other citations omitted).

Relying on the sworn statement of N.H., the victim, Defendant O'Brien arrested Plaintiff. As noted, in most circumstances, such a statement would be sufficient to establish probable cause. Plaintiff, however, argues that this case is different because there is an obvious reason for skepticism because N.H. was the only eyewitness. However, he cites no case law for the proposition that, when there is only one eyewitness and that eyewitness is the victim, that such circumstances raise doubt about the victim's veracity.

Moreover, Defendant O'Brien, who has spent her entire career investigating child sexual assault cases, stated at her deposition that she believed N.H.'s statement was truthful and that the only reason she requested that the case against Plaintiff be closed was because she thought that she had to corroborate N.H.'s statement because she was a minor. In addition, at the time of the arrest, Defendant O'Brien was aware of Officer March's[5] incident report, in which he had written that N.H.'s mother, K.H. told him that "she had heard from [N.H.] that this ha[d] happened to another friend of [Plaintiff's daughter] before. [K.H.] also stated that this [was] not the first time this ha[d] happened to [N.H.]. [K.H.] stated that an ex-boyfriend, a male on a plane and kids at school ha[d] done things like this to [N.H.]." *See* Sealed Dkt. No. 47. There is nothing in this report, however,

---

[5] Officer March was the officer who initially responded to K.H.'s report of the incident.

that calls into question the veracity of N.H.'s statement about Plaintiff. Furthermore, there is no evidence in the record that N.H. had any kind of previous relationship with Plaintiff nor is there any evidence to suggest that N.H. had any motive to make a false accusation against Plaintiff. Thus, the Court finds that Plaintiff has not come forward with any admissible evidence to raise a disputed issue of material fact that there were any circumstances that would have raised doubt in Defendant O'Brien's mind as to the veracity of N.H.'s statement, which she signed under penalty of perjury. Accordingly, the Court finds that, based on N.H.'s sworn victim statement, which Defendant O'Brien believed to be true, Defendant O'Brien had probable cause to arrest Plaintiff. Therefore, the Court grants Defendants' motion for summary judgment with regard to Plaintiff's false arrest/false imprisonment claims against Defendant O'Brien.

### E. Plaintiff's state-law claims against Defendant City of Watertown

As noted, Plaintiff asserted state-law claims for abuse of process, malicious prosecution, false arrest, false imprisonment, and negligent supervision, training and retention against Defendant City of Watertown. In order for Defendant City of Watertown to be held liable for the actions of its employees under a theory of *respondeat superior* and/or for negligent supervision, training and retention of its employees, the finder of fact would have to find that at least one of those employees was liable to Plaintiff with regard to one of his state-law claims. However, as noted, the parties stipulated to the dismissal of Plaintiff's state-law claims against Defendants O'Brien and Donoghue. Furthermore, even if the parties had not so stipulated, Plaintiff's state-law claims against Defendants O'Brien and Donoghue are identical to the claims that Plaintiff asserted against them under § 1983, and the Court's analysis of those claims would be the same. Thus, the state-law claims would fail

for the same reasons that the § 1983 claims fail. Moreover, Defendant City of Watertown cannot be held liable for the negligent supervision, training and retention of Defendants O'Brien and Donoghue where those individuals did nothing wrong. Accordingly, the Court dismisses Plaintiff's state-law claims against Defendant City of Watertown.

## IV. CONCLUSION

Having thoroughly considered the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment, *see* Dkt. No. 42, is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated: March 17, 2020
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge